RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE  12 / 7 / 05
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| TERRI DAVIS | CIVIL ACTION NO. 03-1796 |
| VERSUS | JUDGE S. MAURICE HICKS, JR |
| JOHN E. POTTER | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by the Defendant, John E. Potter, in his official capacity as Postmaster General of the United States of America ("the Post Office") [Doc. No. 29]. Plaintiff, Terri Davis ("Davis") has sued the Post Office for alleged sex-based discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. Defendant moves for summary judgment dismissing all of Plaintiff's claims. Plaintiff opposes the motion. For the reasons which follow, the Court finds that there are no genuine issues as to any fact material to the motion, and the Post Office is entitled to judgment as a matter of law.

## BACKGROUND

Plaintiff, Terri Davis, is a former employee of the United States Postal Service (the "Post Office"). She began working for the Post Office as a custodian in 1997 [Doc. No. 1, ¶ 5] In July of 1999, Davis sent a letter to Grady Allen, the manager of the Maintenance Department for the Shreveport Processing and Distribution Center, requesting to transfer to that facility. [Stmt. Disp. Facts No. 2] Davis' request was granted, and she transferred

in October of 1999. [Id. Nos. 3; 4] Her direct supervisor at the Shreveport facility was Ray Smith. [Id. No. 5]

Davis initially worked on the day shift. [Id. No. 5] She alleges that Grady Allen ("Allen") began expressing an interest in her early in her employment. She claims that he told her that she was pretty and that he liked her. [Davis dep. pp. 18; 34] She also claims that he told her that she had a cute butt and that he liked to watch her walk. [Id. p. 96] Davis further complains that Allen would page her to different areas of the workplace just to talk to her, and would ask her personal questions about her husband and her kids. [Id. pp. 36-38] Davis claims that she declined Allens' invitations, reminding him that she was married. [Doc. No. 1 ¶¶ 9; 11] However, she did accept his lunch invitation on one occasion. [Davis dep. pp. 19-20] Nevertheless, Davis claims she tried to avoid Allen as much as possible. [Doc. No. 1 ¶ 11]

At some point, Davis was assigned to work the night shift, from 2:30 p.m. until 11:00 p.m. [Stmt. Disp. Facts No. 6] She remained on that shift for about one year. [Id.] Davis alleges that during that period of time, Allen would call her at home several times a week. [Davis dep. p. 23] She alleges that he would often call and ask her to dinner, and on one occasion, suggested that they could meet in a motel for dinner. [dep. pp. 29; 32; 95] Davis interpreted the motel suggestion to be a request for sex. [Id. p. 95] Davis then returned to the day shift in April of 2001. [Stmt. Disp. Facts No. 6] Davis claims that Allen never called her again after that. [Davis dep. p. 23]

When Davis returned to the day shift, Ray Smith took her into the office and warned her that things were going to be run "his way" now that she was on his shift. [Davis dep. p. 52] Davis complains that Smith seemed hostile towards her, and would look at the clock

and watch her as if to hurry her up if she stopped to talk to other people while working. [Id. pp. 53-54] However, Davis does not allege that Smith sexually harassed her. [Davis dep. p. 54]

Davis claims that she complained to Allen that Smith was yelling at her and was "always on [her] back." [Id. p. 62] Davis claims that Allen responded that if she would cooperate with him, he would make things better with Smith. [Id. p. 64; Doc. No. ¶ 14] Although Allen did not say how he would make things better, Davis assumed based on Allen's tone and the way he looked at her that he meant that if she had a relationship with him, he could make her job easier. [Davis dep. pp. 64-65] Plaintiff admits that she never reported this to anyone at the Post Office. [Id. p. 66]

On March 6, 2002, Davis claims that Allen grabbed her left buttock with his hand [Davis dep. pp. 78-79] Davis claims that this incident was the only time that Allen ever touched her in a "sexual advance way." [Davis dep. pp. 81-82] The next day, Davis claims that Allen apologized to her and said that it would not happen again. [Id. p. 91] Indeed, Davis admits that after the apology, Allen never said anything else to her. [Id. pp. 102-103] Although admitting that Allen never called her or talked to her again, Davis claims that after the apology, she noticed that "everywhere [she] went [Allen] was there" and that he was "watching her." [Id. pp. 102; 108] However, she admits that Allen normally walked around the facility. [Id. p. 39]

On May 17, 2002 (two and a half months after the alleged buttock grabbing incident), Davis told Ray Smith that she wanted to see an EAP counselor, although she did not tell him what type of problem she was having. [Doc. No. ¶ 19; Davis dep. p. 100] Smith called and set up the appointment. [Davis dep. p. 100] The EAP counselor was

Robert Lanier, who advised Davis to call the "sexual harassment number that's posted all over the post office." [Id. pp. 103-104] Davis did not call at that time, but instead "waited around and thought about it" for awhile. [Id. p. 104] When Davis finally called the hotline, she was told that she needed to see an EEO counselor. [Id. p. 114]

In May and June of 2002, Davis began to miss a lot of work. [Stmt. Disp. Facts Nos. 35-43] She was out for three straight weeks between May 26 and June 14. [Id.] On June 10, 2002, a Notice of Suspension was issued to Davis for unsatisfactory attendance based on her absences between January 4, 2002 and May 15, 2002. [Id. No. 45] Ray Smith completed the "Request for Appropriate Disciplinary Action." [Id. No. 46; Exhibit D] Davis claims that she took some sick leave, and when she came back they tried to give her the suspension. [Davis dep. pp. 88; 107] She signed the document on June 26, 2002. [Davis dep., Ex. 1] However, Davis admits that she was not actually suspended. [Davis dep. pp. 115; 132] According to Plaintiff's Reply Brief, her last day to work was July 11, 2002. [Reply Brief p. 4]

On July 10, 2002, Plaintiff requested an appointment with an Equal Employment Opportunity ("EEO") dispute Resolution Specialist complaining of sexual harassment and retaliation. [Id. No. 86] Davis was subsequently hospitalized on July 12, 2002. [Davis dep. p. 101] She admits that she never reported Allen's alleged actions to the Post Office until after she went into the hospital. [Id. p. 50][1] On July 25, 2002, Davis initiated her informal

---

[1] Although Davis may have discussed Allen with her co-workers, she never reported his alleged conduct to anyone with supervisory or managerial authority at the Post Office until after the fact.

employment discrimination complaint for sexual harassment and retaliation. [Id. No. 87] She never returned to work.

On February 12, 2003, Davis' doctor issued a letter stating that Davis could return to work on a part time basis, but at a different post office and not under the same management. [Stmt. Disp. Facts No. 71] In response, the Post Office issued a letter explaining that the provided work medical certification documents must be completed, signed and dated by the physician for the requested relief, and that the provided "PUB 71" and the "request for light duty" forms must be completed by the physician and include an indication of the specified restrictions. [Id. No. 73] Davis' doctor submitted the requested forms. [Id. Nos. 74]

On April 29, 2003, the Post Office responded and requested additional information concerning the details of the request for light duty. [Id. No. 76] The April 29, 2003 letter included the following statement from the "Local Memorandum of Understanding (LMOU), Item 16, Section E":

> When an employee is recuperating from serious illness or unusual circumstances requiring a temporary reassignment, this reassignment shall be limited to sixty (60) days. The request shall be supported by a medical statement from a licensed physician stating, when possible, the anticipated duration of the convalescence period. Such employee agrees to a further examination by a Public Health Service, Doctor, or Physician designated by the installation head, if that official so requests. This reassignment shall be limited to sixty (60) days.
>
> Under dire circumstances, due to illness, this temporary reassignment may be extended thirty (30) days.

[Id. No. 77] In closing, the April 29, 2003 letter stated that upon the requested clarifications as to the requested light duty, the Post Office would attempt to accommodate such requests. [Id. No. 78]

On May 14, 2003, the Post Office sent a letter stating that no response to the April 29th letter had been received. [Id. No. 79] Davis was further notified that she must contact the Post Office immediately, and was warned that her absences were being considered leave without pay due to the need for the requested information. [Id.]

On May 29, 2003, Davis' doctor sent a letter to the Post Office stating that Davis was to return to work on a part-time basis for 60 days beginning on May 1, 2003. [Id. No. 80] The letter further stated that Davis was to work at a different location indefinitely and that at no time was she to work under Grady Allen, Ray Smith or Martha Reyenga [Id.]

On November 7, 2003, the Post Office sent a letter to Davis outlining the aforementioned correspondence. [Id. No. 81] This letter addressed a letter sent to Davis dated June 3, 2003 in which the Post Office informed Davis that it had not received a response to its request for clarification as to the issue of light duty, and had therefore denied such request. [Id.] Neither the writer of the November 7, 2003 letter nor the Postmaster of Shreveport Post Office ever received the requested information. [Id.]

After quoting the requested information as set out in the employee manual, the November 7, 2003 letter states that such information must be received no later than ten days from the receipt of that letter. [Id. No. 82] That letter concludes "I cannot over emphasize the importance of your providing this information within ten (10) days from your receipt of this letter. Your failure to comply with the above instructions will result in your

absence being charged to Absent Without Official Leave (AWOL) and appropriate disciplinary action up to and including removal from the Postal Service." [Id.]

On December 23, 2003, the Post Office sent Davis a letter stating that it still had not received the requested information.[2] [Id. No. 83] The December 23, 2003 letter quotes the relevant requested information from the employee manual. [Id. No. 84] The December 23, 2003 letter concludes with the same warning of the USPS letter of November 7, 2003. [Id. No. 85] Davis never returned to work at the Post Office.

## LAW AND ANALYSIS

I. **Summary Judgment Standard**

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); see also, Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate

---

[2]Davis admits that many of the forms were submitted late, and states that she had a hard time getting her doctor to "write forms." [Davis dep. p. 165]

the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc.,

76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant can not meet this burden, then "the motion for summary judgment must be granted." Id., Little, 37 F.3d at 1076.

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.

**II.     Plaintiff's Retaliation Claim.**

Davis believes that the attempted seven-day suspension was retaliatory. Specifically, according to her deposition testimony, Davis believes that her suspension was in retaliation for her being off work and for going to the EAP. [Davis dep. pp. 120-121] To establish a *prima facie* case on her retaliation claim, Davis must show (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. Smith v. AT & T Solutions, Inc., 90 Fed. Appx. 718, 723 (5th Cir. 2004); Fierros v. Tex. Dep't of Health, 274 F.3d 187 (5th Cir. 2001).

"Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." Green v. Administrators of Tulane Educational Fund, 284 F.3d 642, 657 (5th Cir. 2002) Thus, "changing locks, restructuring office procedures, clarifying job duties, and taking disciplinary actions in the form of reprimands[ ] do not constitute ultimate employment decisions." Id. at 657-58.

In Mattern v. Eastman Kodak Company, 104 F. 3d 702 (5th Cir. 1997), the Fifth Circuit found that hostility displayed by fellow employees, having tools stolen, supervisors visit the plaintiff's home after she called in sick, a verbal threat of being fired, a reprimand for not being at her assigned station, a missed pay increase, and being placed on final warning, did not constitute actionable employment actions. As the court in Mattern noted:

> To hold otherwise would be to expand the definition of 'adverse employment action' to include events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee– anything which *might* jeopardize employment in the future. Such expansion is unwarranted.

Mattern, 104 F.3d at 708 (emphasis in original). Another Fifth Circuit case, Dollis v. Rubin, 77 F. 3d 777, 781-82 (5th Cir. 1995), held that the employee's allegations that she was not considered for a promotion, was not permitted to attend a training conference, had her work criticized by government vendor, was given false information regarding the aspects of her employment, and was denied a desk audit were not actionable adverse actions.

Davis' retaliation claim must fail as she has offered no evidence that she suffered an adverse employment action. Although she complains of the Notice of Suspension, she admits that she was not actually suspended.[3] [Davis dep. pp. 115; 132] For the reasons discussed in Subsection IV infra, Davis cannot establish a constructive discharge. Since Davis cannot show that she ever suffered an adverse employment action, she cannot

---

[3] Exhibit H would indicate that the suspension was downgraded to a Letter of Warning. However, there is no competent summary judgment evidence (i.e., pleadings, depositions, answers to interrogatories, admissions of file, or affidavits) to that effect. See F.R.C.P. Rule 56.

established a *prima facie* claim of retaliation and summary judgment is proper as a matter of fact and law.[4]

### III. Plaintiff's Hostile Environment Harassment Claim.

The Post Office moves for summary judgment dismissing Davis' hostile work environment claim. To establish her claim, Davis must show that:

> 1) she belongs to a protected class; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). Furthermore, Davis must show that the conduct was severe or pervasive. The alleged discrimination must have "created an environment that a reasonable person would find hostile or abusive." Id. Courts determine hostile environment considering the totality of the circumstances. Factors to consider include: "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id.; see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

In order to meet her burden, Davis must show more than a few isolated incidents of gender based harassment. See Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir.1986). Instead, there must be a steady barrage of discriminatory comments. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). A hostile work environment

---

[4]Although the attempted suspension is not a tangible employment action which is actionable in and of itself, it can be considered when evaluating Davis' hostile environment claim.

can only be found when the workplace is "permeated" by the offensive conduct. Id. Furthermore, Davis' own subjective beliefs, however genuine, cannot form the basis of judicial relief. Nichols v. Lewis Grocer, 138 F.3d 563 (5th Cir. 1998); Little v. Republic Refining Co., 924 F.2d 93, 95 (5th Cir. 1991).

### A. *Continuing Violation.*

As a federal employee, the Federal Regulations require Davis to follow certain procedures before filing her Title VII suit. The first step in filing an EEOC complaint is that an aggrieved employee must contact an agency EEO counselor within 45 days of the alleged discriminatory conduct to request informal counseling. 29 C.F.R. § 1614.105(a). Ramsey v. Henderson, 286 F.3d 264 (5th Cir. 2002). Davis' first contact with the EEO was July 10, 2002. [Exhibit 203] Accordingly, the actionable period is from May 26, 2002 to July 10, 2002. Any claim concerning any actions occurring before May 26, 2002 are barred as untimely unless Davis can establish waiver, estoppel, or equitable tolling to circumvent this requirement. Teemac v. Henderson, 298 F.3d 452 (5th Cir. 2002).

The alleged compliments, telephone calls, and invitations from Allen, along with the single buttock grabbing incident of March 6, 2002, all occurred prior to the actionable period. The only allegedly harassing conduct which occurred within the actionable period is (1) Davis' claim that Allen walked around and watched her at work; (2) the attempted suspension; and (3) the requests for additional information concerning her FMLA leave.[5]

Davis has offered no competent summary judgment evidence that the requests for further information concerning her FMLA leave was harassment based on her gender.

---

[5] Davis does not contend nor has she submitted any evidence to suggest that her assignment to VMF was based on her gender or was otherwise discriminatory.

This is especially true since there is no evidence that any of the requests came from Allen. As for her claim that Allen walked around and watched her work, Davis admits that it was within his duties to stroll around the plant observing the employees. [Davis dep. p. 39] Davis admits that Allen did not talk to her, did not call her, and did not attempt to touch her during that time.[6] Davis has submitted no evidence beyond her own subjective belief that Allen's actions were based on her sex. As for her attempted suspension, Davis believes it was related to Allen's sexually harassing conduct because when she was out on sick leave, Allen asked a co-worker if Davis was going to file sexual harassment charges against him. [Parish dep. p. 35-36] Viewing the facts in a light most favorable to Davis, the Court finds that a genuine issue of fact exists as to whether these events were based on Davis' sex. However, these events alone are neither severe nor pervasive, and do not rise to the level of an actionable hostile work environment as a matter of law.

However, Davis attempts to avoid summary judgment by invoking the "continuing violation" doctrine to render her claims regarding Allen's previous conduct (the compliments, the phone calls, the invitations, the grabbing incident) timely. In order to show such a "continuing violation", Davis would have to show that an act *contributing to the claim* occurred within the actionable period. See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S.Ct. 2061, 2074 (2002)(emphasis added). Then, the entire time period of the hostile environment could be considered by the Court for the purposes of determining liability. Id.

---

[6]The "Description of Incident Activity" [Exhibits 203, 207] suggests that Allen may have talked to Davis at some point after his apology. However, it is not competent summary judgment evidence and cannot refute Davis' sworn testimony to the contrary (see note 3, supra).

After an independent review of the record, viewing the facts in a light most favorable to Davis and considering the prior alleged acts of harassment as relevant background, the Court finds that there is a genuine issue of fact as to whether Davis' actions in walking around and watching Davis work and the attempted suspension (the acts of which she timely complains) and Davis' previous actions (the alleged compliments, telephone calls, invitations, and the single buttock grabbing incident of March 6, 2002) constitute one continuing violation, and if so, whether those actions rose to the level of an actionable hostile environment. However, the Court further finds that those issues of fact are not fatal to the Post Office's motion for summary judgment for the reasons which follow.

### B. *Faragher/Ellerth* Affirmative Defense.

An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275 (1998). See also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, (1998).

At all times relevant to Davis' allegations, the Post Office established and maintained an anti-sexual harassment program. [Stmt. Disp. Fact No. 90] The policy, as

well as information relating to how to report harassment, appears in the form of a series of posters displayed by direct order of Postal Service Headquarters in prominent locations throughout the Post Office facilities. [Id. No. 93] Posters are distributed all over the Post Office with a sexual harassment hotline number for employees to call. [Id. No. 89] Further, Post Office managers and supervisors are trained in methods to prevent and promptly handle sexual harassment complaints and the process for referring such complaints. [Id. No. 92]

Although she did not specify the nature of her complaints, Davis claims that she complained about Allen to two managers, Ken Maher and a man from Baton Rouge whose name she could not remember. [Davis dep. pp. 143-144] This was during the time that Davis was working in VMF [Id.] Davis testified in her deposition that she told Maher that Allen was harassing her. [Davis. dep. pp. 143-144] Her testimony does not reveal the nature of complaint beyond mere "harassment" from Allen. However, Maher testified that her complaint concerned discipline over her attendance.[7] [Maher dep. pp. 10-11, Att. Y] Accordingly, Davis has not shown that Maher failed to act on any complaint of sexual harassment against Allen.

Likewise, a co-worker who was present during Davis' conversation with the Baton Rouge manager testified that the man's name was Charles Turner, and that Davis' complaint to Turner concerned her being disciplined for taking time off. [Roper dep. p. 9-

---

[7]Since there is no competent summary judgment evidence that Davis complained to Maher that Allen was *sexually* harassing her (as opposed to harassing her based on her absences), Maher's deposition testimony that she did not complain to him of sexual harassment stands unrefuted. There is no genuine issue of fact as to the nature of her complaint.

10] Turner also testified that Davis never complained to him of any alleged sexual harassment.[8] [Turner aff., Att. Z] Accordingly, Davis has not shown that Turner failed to act on any complaint of sexual harassment against Allen.

Plaintiff argues that it "can be inferred" that Smith knew of Allen's alleged actions since Allen was his supervisor and feared that she would file a sexual harassment complaint against him. [Stmt. Disp. Facts No. 33] Davis further argues that the prevalence of Allen's actions establish "constructive knowledge" and that Smith's statement that Davis should not expect special treatment because Allen thought she was pretty shows that Smith witnesses at least some of the alleged actions. [Stmt. Disp. Facts No. 34] However, knowledge that Allen thought Davis was pretty does not equate to knowledge that Allen was sexually harassing her. Davis has not submitted any competent summary judgment evidence that Smith knew that Allen was sexually harassing her.

When Davis eventually approached Smith about seeing an EAP counselor in May of 2002 (two and a half months after the alleged buttock grabbing incident), she did not tell him the type of problem she was having. Indeed, by that time the alleged compliments, telephone calls, and invitations from Allen had ceased. The EAP counselor advised Davis to call the sexual harassment number that Davis claims was "posted all over the post office."[9] Davis did not call at that time, but instead "waited around and thought about it" for

---

[8]Since there is no competent summary judgment evidence that Davis complained to Turner that Allen was *sexually* harassing her (as opposed to harassing her based on her absences), Turner's affidavit that she did not complain to him of sexual harassment stands unrefuted. Again, there is no genuine issue of fact as to the nature of her complaint.

[9]Despite the arguments made in Plaintiff's Opposition Brief, the record is devoid of any evidence that the EAP counselor was a manager or supervisor for the Post Office.

awhile. [Id. p. 104] When Davis finally did call the hotline, she was informed that she needed to contact an EEO counselor. Davis failed to do so until almost a month after the Notice of Suspension.

Despite the Post Office's policy and despite the sexual harassment hotline which Davis admits was "posted all over the post office," Davis waited until after the alleged sexual harassment (which she claims began in 1999) had virtually stopped before she finally chose to complain. When she finally did complain, she chose to ignore (at least initially) the direction given to her at each level. She delayed in calling the hotline. She delayed in contacting the EEO. She did not finally call the EEO until July 10, 2002. Considering that her last day at work was July 11, 2002, Davis did not give her employer a chance to remedy the situation.

Davis could have thwarted the creation of a hostile work environment by promptly complaining about Allen's actions. See Indest v. Freeman Decorating, Inc., 164 F.3d 258 (5th Cir. 1999). She simply chose not to do so. Her delay in reporting Allen's alleged conduct was unreasonable as a matter of law. See Thompson v. Naphcare, Inc., 117 Fed. Appx. 317, 324 (5th Cir. 2004)(unpublished opinion)(citing Wyatt v. Hunt Plywood Co., Inc., 297 F.3d 405, 413 (5th Cir. 2002). See also Harper v. City of Jackson Municipal Sch. Dist., 05-60232, slip. op. at *6, 2005 WL 240813 (5th Cir. 9/30/2005)(unpublished opinion) and authorities cited therein.

After an independent review of the record, viewing the facts in a light most favorable to Davis, the Court finds that there is no genuine issue of material fact and that the Post

Office has sufficiently established both prongs of the Faragher/Ellerth affirmative defense.[10] The Court finds that summary judgment dismissing Davis' hostile environment claim is proper as a matter of fact and law.

### IV. Plaintiff's Constructive Discharge Claim.

To survive summary judgment on a constructive discharge claim, the plaintiff must provide evidence that working conditions were "so intolerable that a reasonable employee in her position would [have felt] compelled to resign." Hockman v. Westward Communications, LLC, 407 F.3d 317 (5th Cir. 2004); Webb v. Cardiothoracic Surgery Assoc. of N. Tex., 139 F.3d 532, 539 (5th Cir.1998). Mere harassment, alone, is insufficient; rather, the plaintiff must show "aggravating factors" to justify departure. See Barrow v. New Orleans Steamship Ass'n, 10 F.3d 292, 297 (5th Cir.1994). Such factors include (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir.2001). Ultimately, to succeed on a constructive discharge claim, the plaintiff must show a greater degree of harassment than is required for a hostile work environment claim. Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir.1998).

---

[10]Although the Post Office submitted a multi-page document which purports to be its investigation of Davis' complaint (Att. CC), that document is not competent summary judgment evidence (see note 3, supra). Accordingly, the Court did not take that document into consideration in reaching the instant ruling.

Davis' constructive discharge claim fails for two reasons. First, Davis reiterates the same facts that she alleges constituted harassment; she does not allege facts that provide the aggravation required to support a claim of constructive discharge. See Hockman v. Westward Communications, LLC, supra. Second, Davis admits that she did not report Allen's alleged harassment to the Post Office until after she was in the hospital. She never returned to work after that. As such, Davis' failure to return to work without giving her employer a fair opportunity to remedy the situation was unreasonable and fatal to her constructive discharge claim. Id. (citing Dornhecker v. Malibu Grand Prix Corporation, 828 F.2d 307, 308-09 (5th Cir.1987).

Viewing the facts in a light most favorable to Davis, the Court finds that summary judgment dismissing Davis' constructive discharge claim is proper as a matter of fact and law.

## CONCLUSION

The Court finds that Davis has not provided sufficient evidence to survive summary judgment. There are no genuine issues as to any material fact. Davis has not established a claim for hostile work environment, constructive discharge or retaliation. Summary judgment in favor of John E. Potter, in his official capacity as Postmaster General of the United States of America, dismissing plaintiff's claims, is proper as a matter of fact and law.

Therefore:

**IT IS ORDERED** that the Motion for Summary Judgment filed by the Defendant, John E. Potter, in his official capacity as Postmaster General of the United States of America, [Doc. No. 29] be and is hereby be **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's claims be and are hereby **DISMISSED WITH PREJUDICE.**

Thus done and signed, Shreveport, Louisiana, December 9th, 2005.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE